Argued June 6; affirmed June 27, 1944

SCHOOL DISTRICT NO. 1,
MULTNOMAH COUNTY *v.* BINGHAM ET AL.
(OREGON BUSINESS & TAX RESEARCH, INC.,
INTERVENER)
(149 P. (2d) 963)

*Frank S. Sever,* of Portland (James R. Bain, District Attorney and John M. Colon, Deputy District Attorney, of Portland; Cordon & Sever, of Portland, on the brief), for intervener-appellant.

*Robert S. Miller,* of Portland (McCamant, King & Wood and Grant T. Anderson, of Portland, on the brief), for respondent.

Before Bailey, Chief Justice, and Belt, Rossman, Kelly, Lusk, Brand and Hay, Associate Justices.

KELLY, J.

This is a suit for a declaratory judgment to determine the meaning in which the word "levied" is used in Section 11 of Article XI of the Constitution of Oregon.

The pertinent provision of said section 11 is as follows:

> "Unless specifically authorized by a majority of the legal voters voting upon the question neither the state nor any county, municipality, district or body to which the power to levy a tax shall have been delegated shall in any year so exercise that power as to raise a greater amount of revenue for purposes other than the payment of bonded indebtedness or interest thereon than the total amount levied by it in any one of the three years immediately preceding for purposes other than the payment of bonded indebtedness or interest thereon plus 6 per centum thereof;" * * *

Plaintiff contends, and the trial court held, that the term "total amount levied", as used in Section 11, Article XI means the amount certified by plaintiff to the county authorities each year as its levy. From this holding, defendants and intervener appeal.

Defendants and intervener argue that such term is limited to the amount actually extended upon the tax roll after deducting the amounts credited to plaintiff from the state school support fund.

Defendants' answer admits the allegations of plaintiff's complaint. Intervener incorporates in its com-

plaint in intervention, and by reference adopts said allegations of plaintiff's complaint as fully as if said allegations were set out at length. Thus it is obvious that no issue of fact is tendered in this proceeding. It appears from plaintiff's complaint that the total amount of plaintiff's general fund levy extended upon the assessment roll for the fiscal year 1942-1943 was the sum of $3,710,483.54.

It also appears from said complaint that—

"Prior to July 15, 1943, plaintiff prepared and adopted and submitted to defendants an annual budget of its estimated receipts from all sources, its estimated expenditures for all purposes and its estimated general fund tax for the fiscal year beginning July 1, 1943, and ending June 30, 1944, and thereafter and prior to said July 15, 1943 the defendants approved said budget and the estimated general fund tax levy therein contained and notified plaintiff of such approval. Thereafter and prior to said July 15, 1943, plaintiff levied a tax upon the assessable property within its district for the support of its general fund in the amount set forth in said budget as the amount of its estimated general fund tax levy, to-wit: $3,908,491.00, and thereafter and prior to said July 15, 1943, certified to the County Clerk, to the County Assessor, and to the County School Superintendent of Multnomah County, Oregon, the amount of such general fund tax levy. The aforesaid general fund tax levy was the total amount levied by the plaintiff for all purposes other than the payment of bonded indebtedness and interest thereon for said fiscal year."

It will be observed that the sum of $3,908,491.00 comprising plaintiff's estimated general fund tax levy for the fiscal year beginning July 1, 1943, and ending June 30, 1944, is less than the total general fund

levy for the fiscal year 1942-1943 plus six per centum thereof.

An act proposed by initiative petition was approved at the regular general election, November 3, 1942, which act appears as Chapter 1, Oregon Laws, 1943, p. 7. This act was amended by the legislative assembly of 1943. We here quote the amendatory act:

"Section 1. That section 1, chapter 1, Oregon Laws, 1943, be and the same hereby is amended so as to read as follows:

Sec. 1. From the net revenue derived from taxes on or measured by net income, after application of the amounts required by the provisions of section 110-1523 and 110-1637, O. C. L. A., to be applied to reduce the state levies on property including the state elementary school tax, an amount, not in excess of five million dollars ($5,000,000), derived from taxes on or measured by net incomes shall be transferred by the state treasurer from the general fund to a fund in the state treasury to be known as the state school support fund, which said fund shall be apportioned and paid each year to the several counties in the proportion that the total number of days of actual school attendance of resident pupils in the public elementary and public high schools of each county bears to the total number of days of such attendance in the entire state. Each county shall in turn apportion the funds so received on a similar basis of actual pupil-days attendance to all public school districts therein maintaining public schools or paying tuition to any district maintaining a public school; provided, however, that no district shall receive from this fund in any year an amount greater than its special tax levy for such year. The nonhigh school district shall receive the apportionment for the pupils for whom it pays tuition to any standard public high school, and each union high school

district shall receive apportionment for the actual school attendance of all its pupils residing therein. The amount received by each school district from this source in any year shall be fully applied to reduce the ad valorem property tax levied by the district for such year, as hereinafter provided, but shall not impair the tax base of the district under the limitation imposed by section 11, article XI, Oregon constitution.

Section 2. The clerk of each public school district shall certify to the county school superintendent, on or before June 30 of each year, the total number of pupil-days of actual school attendance of resident pupils of the district for the school year last ended. Similarly, each county school superintendent, on or before July 10 of each year, shall certify to the superintendent of public instruction the total number of pupil-days of actual school attendance of resident pupils of each public school district and, also, the aggregate number of pupil-days of such attendance in all districts of the county for the school year last ended. All such reports shall be made on forms prescribed and supplied by the superintendent of public instruction.

Section 3. From such reports and certifications of the several county school superintendents the superintendent of public instruction, on or before July 10 of each year, shall determine and certify to the secretary of state, to the state treasurer and to each county school superintendent the total amount to be apportioned and paid to each county from the state school support fund for the current fiscal year. Forthwith, on receipt of such certified statement, each county school superintendent shall determine and certify to the county assessor and to the county treasurer the amount to be paid for such year to each public school district of the county entitled to participate in the distribution of the county's apportionment of said fund, as hereinbefore provided.

Section 4. The county assessor shall subtract from the tax levies of the several public school districts the respective amounts, so certified by the county school superintendent, and shall extend on the assessment roll in each case no more than the remainder as the property tax levy of the district for the current fiscal year. Immediately on extension of all such tax levies, the county assessor shall certify to the county school superintendent and to the county treasurer the amounts of such levies as made by the several public school districts, the several amounts by which such levies were reduced under the provisions of this act and the respective remainders extended as the final property tax levies of such districts.

Section 5. On or before October 15 of each fiscal year the secretary of state shall draw warrants on the state treasurer, payable to the treasurers of the several counties from the state school support fund, for not less than one-half of the respective amounts certified to him by the superintendent of public instruction, as hereinbefore provided. Similarly, the secretary of state shall draw warrants on or before April 15 of such fiscal year covering the remainder of the state school support fund apportionment for such year.

Section 6. All moneys so received by the treasurer of any county from apportionment of the state school support fund shall be placed by said treasurer in a special fund, for transfer to the credit of the several public school districts of the county entitled to participate in the distribution thereof, as certified by the county school superintendent. Any balance remaining in said special fund after such transfer of any year shall be added to the amount to be apportioned and paid to the county from the state school support fund for the next ensuing year and shall become available for distribution to the several public school districts entitled thereto, as

hereinbefore provided, in such year." Chapter 439, Oregon Laws, 1943, p. 653.

It will be noted that the foregoing statute expressly provides that the amount received by each school district from the state school support fund "shall not impair the tax base of the district under the limitation imposed by section 11, article XI, Oregon constitution".

To adopt the contention of the defendants and the intervener, would be seriously to impair, if not ultimately efface, such tax base.

The maximum amount of tax levied by resolution of plaintiff's board during any one year of the preceding triennium is $3,908,491.00. The maximum amount actually extended upon the tax roll during any single year of such triennium is $3,710,482.54. If the maximum amount levied by resolution of plaintiff's board be employed as the tax base for the current fiscal year, plaintiff's total tax levy will be $4,143,000.00, whereas, if the maximum amount actually extended upon the tax roll should be so employed, plaintiff's total tax levy would be $3,393,011.49. This latter course would reduce plaintiff's revenue by approximately $210,-000.00. Ultimately such impairment would result in requiring plaintiff to resort to the referendum to secure funds with which to defray the necessary and ordinary expense of maintaining a school, because the statute expressly provides—

"that no district shall receive from this fund in any year an amount greater than its special tax levy for such year;"

and as long as the amount credited to the plaintiff from the state school support fund exceeds six per

cent of maximum assessment carried upon the assessment roll during any one of the three prior years, by using the amount of the tax so carried upon the assessment roll as the tax base for future levies, each successive levy would be smaller than preceding levies and each sum credited to plaintiff in the state school support fund would be correspondingly less than those formerly credited.

■ The provisions of written law, both constitutional and statutory, should be construed in a manner reflecting the purpose of such legislation. 16 C. J. S., Subject: Constitutional Law, Sec. 16, pp. 51, 52 and 53 and authorities cited in note 40; 59 C. J., Subject: Statutes, Sec. 571, and authorities cited in note 46, pp. 960, 964.

■ In the instant case, we think that the learned trial judge has so construed the constitutional and statutory provisions under consideration.

Manifestly, the purpose thereof was two-fold, first, to place a limitation upon the amount of taxes which can be levied without first securing the approval of the electorate, and second, to give assurance that an amount shown by actual experience during the preceding triennium to have been sufficient plus six per centum thereof could be made available to the public without the necessity of a referendum thereon.

To adopt the construction urged by defendants and intervener would unreasonably impair, if not entirely defeat, the aim and design designated above as the second purpose of the constitutional and statutory enactments under consideration.

■ This court has held that the extension of taxes on the tax roll is not part of the levy of the tax, but

is merely a step in the process of its collection. *Waterhouse v. Clatsop County*, 50 Or. 176, 178, 91 P. 1083, 1084. We find no reason for over-ruling that case, wherein the late Mr. Chief Justice ROBERT S. BEAN, speaking for the court, said:

"The extension of taxes on the tax roll and the delivery of the roll, or a copy thereof, to the tax collector, with a warrant attached, is a step in the collection of the taxes, and not in the assessment, apportionment or levy. The law has always carefully distinguished between the assessment, apportionment and levy of taxes, and their collection, and the extension of the taxes upon the roll, or a copy thereof, has always been regarded as one step in the collection." *Waterhouse v. Clatsop County*, supra.

Attention is called by defendants and intervener to an affirmative argument appearing on page 45 of the Voters' Pamphlet of Proposed Constitutional Amendments and Initiative Measures for the General Election of 1916.

The pertinent part of this argument is as follows:

"The purpose of the 'State Wide Tax Limit Amendment' is to limit the increase in taxation to an annual increase not to exceed 6% a year unless a greater increase is authorized by the people. In other words if a man's taxes are $100 this year they can't be more than $106 next year unless the greater increase is authorized by the people. It means that Oregon can continue to spend all the money she is now expending and can increase it 6% a year; but if our public officials wish to increase it at a faster rate they must get the authority of the voters.

If you feel that your taxes are high enough now and that they should not increase faster than 6%

a year in the future unless the voters authorize a greater increase you will support this measure."

This argument applied to the amendment of the constitution which was approved by a majority of the votes cast thereon at the general election held November 7, 1916. The amendment then adopted limited the amount which could be levied by taxing bodies without a referendum for purposes other than the payment of bonded indebtedness or interest thereon to an amount not greater than the total amount levied by it in the year immediately preceding plus 6% thereof. General Laws of Oregon, 1917, p. 12.

The constitutional provision under consideration here was approved on November 8, 1932, and superseded the amendment of 1916.

By the constitutional provision now in force the tax base of any year is not restricted to six per cent in excess of the tax collected in the immediately preceding year, but to a sum *not more than* six per cent in excess of the *maximum tax for any one of the preceding three years*.

Obviously, the argument in favor of the 1916 amendment does not reflect the general understanding by the electorate as to the provisions of the constitutional amendment of 1932.

The constitutional provision now in effect enables the taxing bodies to make a limited tax increase each successive year. We find nothing therein which indicates that in the three years to come progressive reduction in the amount of revenue from taxes without referendum should ensue.

The judgment and decree of the circuit court is affirmed and it is ordered that neither party hereto recover costs or disbursements on this appeal.