Motion to strike denied, motion for order allowed November 6, 1957, argued May 21, modified and remanded July 1, 1959

# OREGON WORSTED COMPANY *v.* STATE TAX COMMISSION

317 P. 2d 924
342 P. 2d 108

Robert Y. Thornton, Attorney General for Oregon, and Theodore W. de Looze and Alfred B. Thomas, Assistant Attorneys General for Oregon, of Salem, for the motions.

Rosenberg, Swire & Coan, Marvin S. W. Swire, and Morton A. Winkel, all of Portland, contra.

BRAND, J.

■ This case presents the identical question which has this day been decided in *M & M Wood Working Company v. Carl Chambers, Ray Smith and Samuel B. Stewart,* Commissioners of the State Tax Commission. The situation here differs in one respect only. In this case, out of an apparent abundance of caution, the Tax Commission has filed a so-called bill of exceptions. That bill contains the entire record as made up at the administrative hearing before the Tax Commission. Although a transcript of testimony could not be considered a bill of exceptions in the absence of certification by the trial judge, we see no reason why a bill of exceptions cannot serve the purpose of a transcript under equity procedure if it contains the entire record. In the light of the 1957 amendment to ORS 306.570 which is fully discussed in the M & M Wood Working case we shall yield to the mandate of the statute and follow the appellate procedure which controls in equity suits.

■ The fact that the Tax Commission has filed a purported bill of exceptions while also seeking an adjudication that such a bill was unnecessary cannot bind

this court or require us to treat the case on appeal as a law action. The case is controlled by our decision in *M & M Wood Working Co. v. Chambers* to which reference is hereby made for our reasons.

The motion of the Tax Commission to strike portions of the purported bill of exceptions is denied, but the prayer that the cause be reviewed by this court as a case in equity is granted.

**ON REHEARING**

*Theodore W. de Looze*, Assistant Attorney General, Salem, argued the cause for respondents-appellants. With him on the brief were Robert Y. Thornton, Attorney General, and Alfred B. Thomas, Assistant Attorney General, Salem.

*Marvin Swire* argued the cause for petitioner and cross-appellant. On the brief were Rosenberg, Swire & Coan and Morton A. Winkel, Portland.

Before McALLISTER, Chief Justice, and LUSK, WARNER, PERRY, SLOAN, O'CONNELL and MILLARD, Justices.

SLOAN, J.

This is another appeal resulting from the efforts of the Multnomah County taxing officials to reassess personal property situate in that county in accordance with § 110-821, OCLA, as amended by § 1, ch 577, Ore-

gon Laws 1951. The section is now codified at ORS 311.210. In the pleadings the taxpayer is referred to as petitioner and the commissioners as "respondents." We will refer to the taxpayer as "company" and the appealing respondents as "commission." The case presents questions very similar to those decided in *J. I. Case Co. v. Chambers*, 210 Or 680, 314 P2d 256. The pertinent statutes relating to the assessment and levy of taxes as well as the procedural aspects of the case are exhaustively treated in that decision. This appeal is to be treated as one in equity. *M & M Woodworking Co. v. Chambers*, 217 Or 168, 317 P2d 920.

Reference to the statute, § 110-821, OCLA, reveals that prior to the amendment in 1951 it provided the means and machinery for assessing real and personal property which had actually been omitted from assessment in "a year prior to the last year so equalized and returned." Within the time limitations of the Act the person having possession of the roll was empowered to assess such omitted property and impose the tax due for the given year of omission. The 1951 amendment added this language to the section just described:

"* * *. Whenever the officer having possession of the roll shall discover that the valuation as of the day of assessment, of any merchandise stock in trade, exceeds the valuation as stated in the taxpayer's return thereof and the true cash value as found by the assessor, such excess shall be presumed to be omitted property subject to additional assessment as provided herein."

This appeal again calls upon the court to consider the construction of this amendment.

The company is engaged within Multnomah County in the processing of raw wool to a finished state of

marketable yarn and fabric. Peculiarly, the company's plant is located on the line dividing Multnomah and Clackamas Counties. The function of that part of the plant located in Multnomah County, our only concern here, was described by a witness as: "* * * to take the fleece wool or raw wool and scour it and clean it, then to turn that clean wool into what the trade calls 'top' which is primarily a twisting operation and then to manufacture out of the 'top' the various yarns the company needs for its trade and for its manufacturing divisions." That part of the plant located in Clackamas County was devoted entirely to the processing of this yarn into cloth. Therefore, the property situate in Multnomah County, with which we are concerned, consists entirely of grease or raw wool, wash wool, noils, scoured wool, finished top, yarn in process, machine yarn, hand yarn, mill ends and fabric. For later mention it is to be emphasized that the machine yarn, hand yarn, mill ends and fabric are the only products which, from the plant in question, enter the stream of commerce.

The pattern of assessment in this case is identical to that of the Case decision, supra, and the more recently decided consolidated cases of *Crown Zellerback Corp. v. Chambers* and *M & M Woodworking Co. v. Chambers,* 217 Or 339 P2d 718. To avoid confusion with the previously cited case of *M & M Woodworking Co. v. Chambers,* 317 P2d 920, 925, we will later refer to the last decided case (68 Or Adv Sh) as the Crown case. The company, in the instant case, as in those cited, filed personal property returns for the tax years 1951-1952 and 1952-1953. These returns included *all* the personal property of the company having a tax situs in Multnomah County on January 1, 1951, and January 1, 1952, respectively. The assessment was

made and the tax paid on the assessment. In 1953 the taxing officials of that county, in reliance upon their interpretation of the 1951 amendment, examined the books of company. The value of this taxable property as it appeared on company's books was substantially greater than the original assessment in each of the years 1951 and 1952. The officials treated the book value as the true cash value required by the statute (§ 110-335, OCLA), considered or "presumed" the excess value to be omitted property and assessed additional taxes accordingly. Company appealed to the commission. The commission, after hearing, adjusted the determination of value for the year 1952. The value as found by the county officials of the taxable property for 1951 was not challenged. The commission otherwise sustained the assessment and directed the payment of tax upon all the excess value as found. Company appealed to the circuit court for Multnomah County. That appeal did not question the value as found by the commission. The company acknowledges that such values were the equivalent of true cash value. The basis of company's appeal to the circuit court, and the basis for that court's decree, is simply that undervalued property is not "omitted" property within the meaning of the 1951 amendment previously set forth.

This case involves the same statute as the Crown case but there the similarity basically ends. The problem we considered in that case was the basis of valuation used by the Multnomah County taxing officials in attempting to determine true cash value. In that case the assessor submitted no evidence of value except book value. We held that this could not, as a matter of law, be considered the equivalent of true cash value as required by the statutes. In the absence of such other evidence of value, we had no choice but to accept

the original assessment as made and to find the commission had not established undervaluation. The same result was reached in *Case v. Chambers,* supra.

■ In the instant case the challenge of the company for both years involved is directed specifically to the contentions that: (1) when it was established that *all* its property was originally assessed, even though undervalued, the statute is satisfied and there was no *omitted* property; (2) that in any event the "merchandise stock in trade" limitation of the statute does not apply to goods in process and can only apply, if at all, to finished goods which the company sells as "merchandise" in the normal channels of trade.

In other words company contends that the omitted property amendment of 1951, with which we are dealing, is limited to "merchandise stock in trade," and when the taxpayer demonstrates, as here, that all its property was assessed and no actual omitted property is found the statute does not apply. The company treats the words "shall be presumed to be omitted property" as raising a presumption of the fact of actual omission. It is claimed that the presumption, as so interpreted, is clearly rebutted upon a showing that the entire taxable property was originally reported and assessed. Therefore, there is no "omitted" property and the statute does not apply. This is the view adopted by the trial court. It held the company had established that none of its property was actually "omitted" and, therefore, no additional assessment could be made. It should be noted that this, and the similar cases, were determined by the able trial judge prior to this court's decision in *Case v. Chambers,* supra.

*Case v. Chambers,* supra, decides issue No. 1 against the company in this case and supports the company's

position in issue No. 2. In each instance the parties, of course, cling to the part of the Case decision favorable to their present contention and ask that we either re-examine the portion of the opinion which is adverse, or, at least, close our eyes and say the decision doesn't say what it actually does with clarity and precision.

At 210 Or 693, it is said:

"* * *. It will be noted that prior to that amendment the section dealt only with the situation where taxable property was actually omitted from the assessment roll. The amendment deals with undervaluation of property which was in fact included on the roll. By a legal fiction it is declared that the amount of the undervaluation shall be presumed to be omitted property."

The remainder of the Case opinion is predicated upon the theory that if the county or the commission cannot establish undervaluation, the statute does not apply. The opinion is based upon that tenent.

■ We find additional reason to treat the language of the amendment as applying to undervalued property. The language of the amendment, to repeat, is: "* * * such excess shall be presumed to be omitted property subject to additional assessment as provided herein * * *." We believe the use by the legislature of the word "presumed" is inaccurate if it is to be held to mean a "presumption" in the evidentiary sense of the word. We take the word in its context here to mean such "excess shall be 'deemed' or 'considered' to be omitted property * * *." That is the true sense of the amendment and is particularly apparent when examined against the background of the section to which it was added. We believe the legislature, by this amendment, was attempting to collect taxes on prop-

erty that had been undervalued as well as upon property omitted from the assessment roll entirely.

We hold that when the original assessment is less than established true cash value, as in this case, such property is treated as or deemed to be omitted property and the difference in value subject to assessment within the other limitations of the statute.

■ The most pertinent limitation is the application of the amendment to property described as "merchandise stock in trade." The remainder of the statute dealing with property actually omitted applies to all taxable property. The legislature saw fit to thus limit the property subject to revaluation and reassessment. The commission urges that we re-examine the definition applied to this limiting phrase in *Case v. Chambers*, supra. That case held that a stock of repair parts maintained by the taxpayer for sale to its retail dealers was "merchandise stock in trade" for that taxpayer. The commission now contends that the Case decision did not eliminate the goods in process of a manufacturer from the meaning of that phrase. As in *Case v. Chambers*, the commission urges that we add the word "and" between the word "merchandise" and the phrase "stock in trade." We declined to do so in Case, and we decline to do so now. 210 Or at p 700.

We are convinced that the legislature advisedly used the phrase in question. It seems clear to us that for the purpose of this particular amendment it was dealing with that type of merchandise, and only that type of merchandise, which moves in the ordinary course of trade and for which a reasonably accurate determination of value was available, regardless of whether it be held by a manufacturer, jobber, wholesaler or retailer. It is to be remembered that the statute

deals with the valuation of property that was on hand some years prior to the revaluation contemplated. Property of the kind indicated would, in nearly every instance, have been consumed or long gone in ordinary trade. To reconstruct the value of finished products held for sale in the normal merchandising methods of a particular industry would not be impossible of accomplishment. It appears, however, that to attempt to find the given status of thousands of items of goods in process, by numerous manufacturers, of an untold variety of products on a given day several years prior to a present attempt to establish their value would be such an impossible burden that the legislature clearly avoided it. It would require an omniscience with which we doubt that either the assessor or commission is endowed. We add that the legislative history of the amendment reflects that it was introduced in the House of Representatives at the request of the State Tax Commission. The language in question was not amended in the course of legislative enactment. It is fair to assume that the questioned language was originally drafted by the commission. For the reasons assigned in *Case v. Chambers* and here we conclude that "merchandise stock in trade" applies only to finished goods available for sale in the ordinary course of business.

We trust that what has now been said settles the interpretation of this statute in respect to these two issues. We now turn to see if we can ascertain the actual amount of finished goods on hand on the assessment dates, and the true cash value thereof, in comparison to the quantity and value reported by company and approved by the assessor in the original assessment. The evidence presented by company to the commission included an exhibit which segregated the amount of

goods in process from the finished materials which were on hand as of January 1, 1952. The same exhibit also provides a ready means for determining the value of each category. Thus, for the assessment year 1952 it can be determined that the true cash value, as projected by company, of the finished goods on hand as of that date was $383,285. This constitutes approximately 20 per cent of the total value of its entire stock of goods. The same evidence is not presented for the year 1951. We assume that the books of the company would provide equal means of making the necessary segregation for the year 1951.

The assessment return of the company is not available to us for either year. We take it from the record that the return was in a "lump" sum and no segregation was made. Therefore, a reference to the original assessment will not provide a segregation of the amount of finished goods included within the taxable property reported by which it can be determined if, in fact, that part of the original assessment which constituted the merchandise stock in trade was undervalued. In other words, as we have shown, it appears a matter of ready computation to determine the true cash value of finished goods actually on hand on January 1, 1951, and January 1, 1952. What we cannot determine is what was in the mind of the officer of the company who prepared the assessment returns for those years as to the proportion thereof he was attributing to finished goods. The record would reflect that for each of those years the company merely filed a return in which it reported its taxable personal property at the value of $285,469.50 for the year 1951 and $350,391.13 for the year 1952. There is no way we can determine the percentage thereof that constitutes finished goods or merchandise stock in trade. It is apparent that the actual value of

the finished goods on January 1, 1952, $383,385, actually exceeds the original reported value of all the goods for that assessment date. It is equally apparent then that the portion of the reported value represented by finished goods was, of course, undervalued.

In this case, then, we readily find that the original assessments were undervalued. The commission has met the burden of proof imposed upon it by *Case v. Chambers*. The next problem is to segregate from the original assessments for each year that amount which represented "merchandise stock in trade" or finished goods available for sale and is thereby subject to reassessment under the Omitted Property Act.

■ We have already determined that the finished goods constitutes approximately 20 per cent of the actual value of goods on hand as of January 1, 1952. And that is the segregation and value as fixed by company in the hearing before the commission. For want of other evidence we would be inclined to apply this percentage to the original return and find that to be a fair means of determining the value of finished goods. This would be particularly true when the return, as submitted to the assessor by the taxpayer, contains no allocation of quantity or value for the personal property included within the return. However, in deciding an appeal of this kind the court may affirm, modify or "remand it to the commission for correction in the light of such guiding principles as the court may lay down." *Case v. Chambers, supra,* at 210 Or 696.

■ Upon remand it would become necessary to decide who has the burden of proving the amount of proportion of the original assessment which was finished goods. At oral argument of this case the parties, including the commission, appeared to assume that *Case*

*v. Chambers* imposed the entire burden on the commission. This could include the task of prying into the mind of the persons who made the original assessment returns for the company and endeavoring to surmise the allocations of value he might have made. We are not inclined to impose such an impossible burden. All the books, records or other information required to provide evidence as to the total quantity of finished goods included in the returns, and their value, is within the possession of the company. It should, therefore, be the burden of the company taxpayer to produce such evidence. We consider it unwarranted to permit the company to hide behind an ambiguous and meaningless return and escape justifiable taxation because the commission is not a mind reader.

When the commission has established, as in this case, that the total original assessment has been materially undervalued, the burden then shifts to the taxpayer to prove the amount thereof that is not subject to the additional assessment and taxation.

Company presents another issue which shall receive passing mention. It contends the effect of the reassessment of omitted property enables the various taxing districts of Multnomah County to violate the 6 per cent limitation imposed by Art XI, § 11, Oregon Constitution. This constitutional provision was amended in 1952 but the limitations imposed on the taxing districts were not materially altered, at least as they apply to the contention made in this case. The mentioned section provides that no tax levying body shall so exercise its power in any given year "as to raise a greater amount of revenue for purposes other than the payment of bonded indebtedness * * * than the total amount levied by it in any one of the

three years immediately preceding * * * plus 6 per centum thereof." It is contended that the additional taxes levied by the reassessment program enable the taxing bodies to violate this constitutional limitation.

■ We only need mention that this constitutes a limitation upon the power of the taxing authority to levy a tax. It is not concerned with nor imposes any limitation upon the assessing authority in fixing assessed valuations. We are convinced it has no application to the case now before us. The levy of a tax by the tax levying body and the process of its assessment and collection are separate, distinct functions in the total process of taxation. *School Dist. No. 1, Mult. Co. v. Bingham,* 174 Or 540, 149 P2d 963. We can also mention that such a construction would require every tax levying body to estimate the amount of taxable property which might be omitted from the assessment rolls in any given year and reduce its levy accordingly. The contention is without merit.

By a cross appeal company complains that the trial court failed to affirm a 16 2/3 per cent reduction in the assessment for the year 1951, granted company by the order of the commission. This reduction is one allowed by the commission to certain taxpayers in Multnomah County. The reduction is an attempt to equalize the ratio of assessment between real and personal property and is an outgrowth of the over-all reassessment program conducted in that county. The commission has apparently applied it to all taxpayers who have been assessed at full true cash value of personal property within the county and who have appealed to the commission. As we view the order of the commission the company would be entitled to this reduction on the property to be reassessed as a result of this decision.

The decree entered by the trial court will be modified. The order which cancels the assessment made by the commission is not disturbed. The court shall, however, remand the case to the commission to make findings in accordance with this opinion. The parties may, by stipulation, submit the facts to the trial court for determination.

Modified and remanded.