[Civ. No. 4264.  Second Appellate District, Division Two.—July 17, 1925.]

## JOHN K. RICE et al., Respondents, v. JUSTINE McCARTHY, Appellant.

[1] Estoppel — Pleading — Findings. — The facts constituting an estoppel must be pleaded and found.

[2] Husband and Wife—Community Real Property—Transfer by Husband Alone—Voidable by Wife—Estoppel.—An instrument by which a husband alone agrees to convey community real property is not void under section 172a of the Civil Code but merely voidable at the instance of the wife; and the wife may by her conduct estop herself from asserting the right which is given her by said section, i. e., the right to avoid her husband's conveyance of the community real property in which she did not join.

[3] Id.—Void Transfer—Public Policy—Estoppel.—As a general rule, estoppel cannot vitalize a transfer which is void because prohibited by law or because it is against public policy. In the eye of the law such a transfer has no existence whatever, and neither action nor inaction can validate it or estop a party against asserting its utter invalidity.

[4] Id.—Purchase in Good Faith and Without Knowledge of Marriage Relation—Presumption—Proviso in Section 172a, Civil Code.—The proviso in section 172a of the Civil Code that "the sole lease, contract, mortgage or deed of the husband, holding the record title to community real property, to a lessee, purchaser or encumbrancer, in good faith without knowledge of the marriage relation, shall be presumed to be valid," cannot be regarded as an application of the doctrine of equitable estoppel to the limited class of transfers specifically referred to therein, because it declares, in effect, that such transfers as fall within the proviso are presumed to be valid—without regard to the wife's conduct or knowledge.

[5] Id.—Knowledge—Estoppel.—To constitute estoppel *in pais* the party estopped should have knowledge of the facts and should so

1. Necessity for pleading estoppel, notes, 69 Am. St. Rep. 709; 70 Am. St. Rep. 591. See, also, 10 Cal. Jur. 653, 656; 10 R. C. L. 842.

2. Power of legislature to restrict husband's right to alienate community property, note, 36 L. R. A. (N. S.) 1040. See, also, 5 Cal. Jur. 344; 5 R. C. L. 853.

3. See 10 R. C. L. 801.

5. See 10 Cal. Jur. 632.

act as to lead the party asserting the estoppel to do what he otherwise would not have done.

[6] ID.—PRESUMPTIONS—PROVISO IN SECTION 172a, CIVIL CODE.—The word "presumed," as used in the declaration of the proviso in section 172a of the Civil Code that every lease, contract, mortgage or deed which is under its protecting aegis "shall be *presumed* to be valid," is doubtless used in the sense that it is *conclusively* presumed that every such lease, contract, mortgage or deed is valid; and the proviso is tantamount to an express statutory recognition of the passing of the title to the lessee, grantee, vendee or mortgagee whenever those conditions exist which are defined in the proviso.

[7] ID.—SECTION 172a, CIVIL CODE—FINE FOR AVOIDANCE OF INSTRU- MENT.—The words "such instrument" where they last occur in the provision of section 172a of the Civil Code to the effect that suit shall not be commenced after one year from the filing of "such instrument" for·record, do not refer to the instrument by which the husband acquired the record title. It evidently was the intention of the legislature that the year within which the action could be brought should not commence to run until the wife·could be charged with at least constructive notice that her husband had alienated or encumbered the title.

[8] ID.—WORDS "SUCH INSTRUMENT" NOT RESTRICTED TO SOLE LEASE, DEED, ETC.—The words "such instrument," where they first occur in the last clause of section 172a of the Civil Code, i. e., in the provision to the effect that no action to avoid "such instrument" shall be commenced after the expiration of one year, refer back to the words "any instrument" in the first part of said section— the part which immediately precedes the proviso therein—and are not restricted to the "sole lease, contract, mortgage or deed" mentioned in said proviso.

[9] ID.—PRESUMPTION AS TO VALIDITY OF INSTRUMENT—EFFECT OF.— A lease, contract, mortgage or deed which the law presumes to be valid cannot be the subject of a successful action to avoid it.

[10] ID.—STATUTORY CONSTRUCTION—STATUTE OF LIMITATIONS—TITLE. A statutory provision which prescribes a time limitation within which a wife may bring an action to avoid her husband's instru- ment of conveyance enwombs the necessary implication that the title passes by the instrument even though the wife did not join with her husband in executing it—that the title passes, but that the instrument which passes it may be invalidated or avoided if the proper action be brought within the prescribed time.

[11] ID. — WIFE'S RIGHT TO AVOID INSTRUMENT — WAIVER — PUBLIC POLICY.—A wife's right·to avoid an instrument transferring com- munity real property, or an interest therein, executed by her husband alone, is a privilege in which the state has no interest

apart from that of the wife herself; and "public policy" does not forbid the wife from waiving her right to avoid a transfer of community real property executed solely by her husband.

[12] ID.—ACTION TO AVOID INSTRUMENT EXECUTED BY HUSBAND ALONE —ESTOPPEL—EVIDENCE—FINDINGS.—In this action by a husband and wife to quiet title to community real property which the husband by an instrument executed solely by him, agreed to convey to defendant, the trial court erred in sustaining objections to evidence offered by defendant in support of facts pleaded by him showing that the plaintiffs were estopped from avoiding said instrument under section 172a of the Civil Code, and also erred in failing to make specific findings upon the facts so pleaded.

---

(1) 21 C. J., p. 1242, n. 92, p. 1254, n. 22.   (2) 31 C. J., p. 124, n. 68, p. 125, n. 88, 89, 91.   (3) 21 C. J., p. 1100, n. 24.   (4) 31 C. J., p. 126, n. 27.   (5) 21 C. J., p. 1123, n. 36, p. 1133, n. 76. (6) 31 C. J., p. 126, n. 27.   (7) 31 C. J., p. 153, n. 45 New.   (8) 31 C. J., p. 153, n. 45 New; 36 Cyc., p. 1107, n. 36.   (9) 31 C. J., p. 126, n. 27; 36 Cyc., p. 1131, n. 73.   (10) 31 C. J., p. 153, n. 45 New. (11) 31 C. J., p. 125, n. 92 New.   (12) 31 C. J., p. 157, n. 38, p. 158, n. 59.

APPEAL from a judgment of the Superior Court of Los Angeles County. Albert Lee Stephens, Judge. Reversed.

The facts are stated in the opinion of the court.

Randall, Bartlett & White and Walter J. Little for Appellant.

Allen, Allen & Eagan for Respondents.

FINLAYSON, P. J.—This is an action to quiet title to a lot in the city of Los Angeles. Judgment passed for plaintiffs and defendant appeals.

Plaintiffs are husband and wife. The interest which they obtained in the property, or, more accurately speaking, the interest which the husband obtained therein, is such as was acquired under a written contract executed on September 1, 1919, by the owner, the California Security Loan Corporation, as the vendor, and the plaintiff John K. Rice, as the vendee, whereby the former agreed to sell and the latter agreed to buy the lot for a valuable consideration. This contract was never recorded. The interest thus ac-

quired under the husband's contract with the owner is conceded to be community property. On November 3, 1919, the husband, as the vendor, and defendant, as the vendee, executed a contract in writing whereby the former agreed to convey the property to the latter for the sum of $2,500, payable in monthly installments of $25 each. Immediately upon the execution of this contract defendant entered into possession of the premises. He has continued in possession ever since, and has made all of the payments due under his contract. The plaintiff Sallie G. Rice did not join with her husband in the execution of the instrument by which he agreed to convey the property to defendant. Plaintiffs brought the action upon the theory that the husband's contract to convey the property to defendant is void under section 172a of the Civil Code. The action was commenced within one year after the execution of the instrument by the husband.

Defendant, invoking the doctrine of estoppel to defeat plaintiffs' claim that the husband's contract with him is void, alleged in his answer that when he entered into his contract with Rice he did not know or have any information that his vendor and Sallie G. Rice were husband and wife; that he did not have any information of their matrimonial relation until January 3, 1920; that he has duly performed all the conditions of his contract; that when he purchased the property Sallie G. Rice knew that the lot was sold to defendant and that it was the subject of the contract between him and her husband; that subsequently to the execution of the husband's contract to convey the property to defendant, the wife received payments made by defendant on the contract, well knowing that the same were made by defendant under his contract with her husband; that the wife used the moneys thus received by her and enjoyed the benefit thereof; that at no time prior to the commencement of the action did the wife object to her husband's sale of the property to defendant, and that by accepting such payments she is now estopped from asserting that defendant's claim to the property is without right. By a supplemental answer defendant further alleged that subsequently to the commencement of the action, and within the time provided by his contract, he paid the monthly installment due under the terms of his contract for each of

the four months commencing on the third days of August, September, October and November of the year 1920; that each of these payments was made to and accepted by the husband; and that by reason thereof the husband is estopped to claim that the contract entered into by him with defendant is of no force or effect.

Respondents do not claim that the facts so alleged in defendant's answer are not sufficient to work an estoppel against plaintiffs if the doctrine of estoppel *in pais* is invocable to support a transfer of community real property in which the wife did not join. What they do claim is that no matter what the wife's conduct may have been, if she did not join with the husband in executing the transfer the doctrine of equitable estoppel cannot be invoked to defeat an action brought to avoid the transfer.

There was evidence, either introduced by defendant or offered by him, which tended to establish the allegations of fact upon which he relies to make good his claim of estoppel. To the introduction of some of this evidence the court sustained objections upon the grounds of irrelevancy and immateriality. These rulings are assigned as error. These assignments present a question which, like the one next to be mentioned, depends for its answer upon whether or not the doctrine of estoppel is invocable in cases of this character.

Instead of making findings upon the facts specifically pleaded by defendant to support his claim of estoppel, the trial court simply found that "it is not true that John K. Rice or Sallie G. Rice were at any time estopped from claiming that plaintiffs are entitled to the possession of said property." This is but the mere statement of a conclusion of law, which leaves us in utter ignorance as to what facts, if any, the trial court considered as constituting an estoppel. [1] "The rule is that the facts constituting the estoppel must be pleaded. . . . By the same rule the facts constituting the estoppel must be found." (*Fritz* v. *Mills*, 12 Cal. App. 118 [106 Pac. 727].) It follows, therefore, that defendant was entitled to findings upon the facts pleaded by him and which he claimed raised an estoppel, unless, as contended by respondents, the doctrine of estoppel never can be invoked by the husband's transferee in an action of this character.

The code section which inspired plaintiffs to bring this action reads: ''The husband has the management and control of the community real property, but the wife must join with him in executing any instrument by which such community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed or encumbered; provided, however, that the sole lease, contract, mortgage or deed of the husband, holding the record title to community real property, to a lessee, purchaser or encumbrancer, in good faith, without knowledge of the marriage relation, shall be presumed to be valid; but no action to avoid such instrument shall be commenced after the expiration of one year from the filing for record of such instrument in the recorder's office in the county in which the land is situate.'' (Civ. Code, sec. 172a, adopted July 27, 1917.   Stats. 1917, p. 829.)

Prior to the adoption of this section it was the established doctrine in this state that during the marriage the husband is the sole and exclusive owner of all community property, and that the wife has no claim thereto nor any interest or estate therein other than a mere expectancy as heir, if she survive him. (*Spreckels* v. *Spreckels,* 172 Cal. 775 [158 Pac. 537], and cases there cited.)   Whether this doctrine has suffered any modification by reason of the adoption of section 172a is a question which was purposely left open in *Roberts* v. *Wehmeyer,* 191 Cal. 601 [218 Pac. 22], the court there saying 'that because the property in that case was acquired before the section was adopted ''it is unnecessary to consider the question . . . whether, with reference to after-acquired property, the section creates an estate in the wife which she had not theretofore possessed.''   Nor do we find it necessary here to consider that question, for both parties to this appeal have expressly conceded that it is the power of alienation, and not the nature of the estate, which is affected by the statute.   Therefore, for the purposes of this appeal, we shall adopt counsel's concession as embodying a correct statement of the law.

[2] If, as counsel concede, the section affects only the power of alienation and not the nature of the estate, then the legislative intent may best be carried out by regarding the transfer as being good as against the husband but voidable at the option of the wife.   In *Spreckels* v.

*Spreckels, supra, Dargie* v. *Patterson,* 176 Cal. 714 [169 Pac. 360] , and *Italian American Bank* v. *Canepa,* 52 Cal. App. 619 [199 Pac. 55], it was held that under section 172 of the Civil Code, prior to its amendment in 1917, a gift by the husband of community property without the wife's written consent thereto, or a conveyance by him of such property without a valuable consideration and without such consent, is good as against the husband; that the wife is the only person who has the right to complain; and that she possesses no more than an optional right to avoid the gift or conveyance and if necessary to sue to recover the property, not as her separate estate, but to reinstate it as a part of the community property, with the title vested in her husband and subject to his management and control, as before. We think that what was said in those cases as to the nature of the right possessed by the wife under section 172 is substantially a correct statement of the nature of the wife's right under section 172a after a transfer by her husband in which she did not join; for, as we later shall show when analyzing section 172a, the husband's transfer is not void but merely voidable.

The question, then, is this: May the wife by her conduct estop herself from asserting the right which is given her by section 172a, i. e., the right to avoid her husband's conveyance of community real property in which she did not join? [3] As a general rule, estoppel cannot vitalize a transfer which is void because prohibited by law or because it is against public policy. In the eye of the law such a transfer has no existence whatever, and neither action nor inaction can validate it or estop a party against asserting its utter invalidity. The rule is announced in Ruling Case Law as follows: "It is generally considered that, as between the parties to a contract, validity cannot be given to it by estoppel if it is prohibited by law or is against public policy." (10 R. C. L., p. 801.)

Respondents contend that a conveyance of community real property in which the wife does not join is void, both because it is prohibited by law and because it contravenes public policy. Is such a conveyance so far prohibited by section 172a as to be an absolute nullity, wholly ineffective for any purpose whatever? [4] That section, as we have seen, contains a proviso which declares that "the sole lease,

contract, mortgage or deed of the husband, holding the record title to community real property, to a lessee, purchaser or encumbrancer, in good faith without knowledge of the marriage relation, shall be presumed to be valid." This proviso cannot be regarded as an application of the doctrine of equitable estoppel to the limited class of transfers specifically referred to therein, because it declares, in effect, that such transfers as fall within the proviso are presumed to be valid—without regard to the wife's conduct or knowledge. [5] To constitute estoppel *in pais* it is axiomatic that the party estopped should have knowledge of the facts and should so act as to lead the party asserting the estoppel to do what he otherwise would not have done.

[6] The word "presumed," as used in the declaration of the proviso that every lease, contract, mortgage or deed which is under its protecting aegis "shall be *presumed* to be valid," is doubtless used in the sense that it is *conclusively* presumed that every such lease, contract, mortgage or deed is valid. We have then in this part of the section what is tantamount to an express statutory recognition of the passing of the title to the lessee, grantee, vendee or mortgagee whenever those conditions exist which are defined in the proviso.

The proviso is sandwiched between the first and concluding portions of the section. The concluding clause declares that "no action to avoid *such instrument* shall be commenced after the expiration of one year from the filing for record of *such instrument* in the recorder's office in the county in which the land is situate." [7] Obviously, the words "such instrument" where they last occur, i. e., in the provision to the effect that suit shall not be commenced after one year from the filing of "such instrument" for record, do not refer to the instrument by which the husband acquired the record title. It evidently was the intention of the legislature that the year within which the action could be brought should not commence to run until the wife could be charged with at least constructive notice that her husband had alienated or encumbered the title. But the recording of the instrument whereby the husband acquired the record title would not afford notice to the wife that he had alienated or encumbered the title so acquired by him. [8] Equally obvious is it that the words "such instru-

ment," where they first occur in the last clause of the section, i. e., in the provision to the effect that no action to avoid "such instrument" shall be commenced after the expiration of one year, refer back to the words "any instrument" in the first part of the section—the part which immediately precedes the proviso—and are not restricted to the "sole lease, contract, mortgage or deed" mentioned in the proviso. One reason for so concluding is that the word "instrument" nowhere occurs in the proviso. Another and more cogent reason is that it would lead to an absurdity to hold that the words "such instrument" in the last clause of the section refer to the "sole lease, contract, mortgage or deed" mentioned in the proviso. In the proviso it is declared that the "sole lease, contract, mortgage or deed" there referred to "shall be presumed to be valid." [9] But a lease, contract, mortgage or deed which the law presumes to be valid cannot be the subject of a successful action to avoid it. The statute does not contemplate so vain a thing as an action to avoid an instrument which the law itself declares shall be presumed to be valid.

These considerations lead irresistibly to the conclusion that, so far as the meaning of the words "such instrument" is concerned, the first and last parts of the section should be read as though the proviso which separates them had been omitted. So read, the section would provide that ". . . the wife must join with him [the husband] in executing any instrument by which such community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed or encumbered; but no action to avoid such instrument shall be commenced after the expiration of one year from the filing for record of such instrument in the recorder's office in the county in which the land is situate."

From the foregoing analysis of the section it will be seen that it fixes a limitation of one year from the recording of an instrument executed by the husband alone, and which is not within the saving grace of the proviso, within which to bring an action to avoid the husband's instrument. [10] But a statutory provision which prescribes a time limitation within which a wife may bring an action to avoid her husband's instrument of conveyance enwombs the necessary implication that the title passes by the instrument even

though the wife did not join with her husband in executing it—that the title passes, but that the instrument which passes it may be invalidated or avoided if the proper action be brought within the prescribed time. In other words, even those instruments which are not under the shield of the proviso are only voidable and are not void. And that is precisely what was said of such instruments in *Goodrich* v. *Turney,* 44 Cal. App. 516, 519 [186 Pac. 806], the court there remarking that if it be assumed that a contract to exchange properties is within the purview of section 172a, "that does not make the writing absolutely void, but voidable only at the instance of the wife." The supreme court in that case denied a petition for a hearing by it after judgment of the district court of appeal. We conclude, therefore, that the instrument here sought to be avoided is not void because prohibited by law.

[11] Nor is there any reason why it should be held that "public policy," a term of vague and uncertain meaning, forbids the wife from waiving her right to avoid a transfer of community real property executed solely by her husband. A wife's right to avoid an instrument transferring community real property, or an interest therein, executed by her husband alone, is a privilege in which the state has no interest apart from that of the wife herself. There is no duty, perfect or imperfect, on the part of a wife to contest the validity of her husband's transfer of community real property. It is true that the claim of a surviving wife to her share of the community property upon the death of her husband is one which, from the nature of the marriage relation, appeals to the courts and to society; but it has repeatedly been held that the wife may by contract relinquish her expectancy as heir in such property. (*Estate of Sloan,* 179 Cal. 393 [177 Pac. 150]; *Estate of Brix,* 181 Cal. 667 [186 Pac. 135].) In *Spreckels* v. *Spreckels, supra* (decided prior to 1917), the court, speaking of the provision in section 172 to the effect that the husband cannot make a gift of community property or convey the same without a valuable consideration unless the wife, in writing, consents thereto, said: "The provision was manifestly intended solely for the benefit of the wife." (172 Cal. 784 [158 Pac. 540].) We think it equally manifest that the provision in section 172a which

recognizes the wife's right to avoid an instrument which is within the purview of that section was intended solely for the wife's benefit, and that she is under no obligation to the state to exercise the right. It is generally held that statutory provisions designed solely for the benefit of individuals may be waived by the persons for whose benefit they are designed. (6 Cal. Jur., p. 120.) See *In re Garcelon,* 104 Cal. 570 [43 Am. St. Rep. 134, 32 L. R. A. 595, 38 Pac. 414], where an agreement between nephews and the testatrix not to contest the latter's will was sustained against the plea that the contract was opposed to public policy. In section 172a the legislature itself, by allowing the wife the short period of one year from the recording of her husband's instrument of conveyance within which to bring an action to avoid it, evinces an unmistakable intention to regard her right as one to which no special sanctity attaches.

In the state of Washington, which has a statutory provision similar to that contained in section 172a of our Civil Code, it frequently has been held that the doctrine of estoppel may be invoked against the wife. Thus in *Magee* v. *Risley,* 82 Wash. 178 [143 Pac. 1088], the court, having under consideration a case involving the application of the statute, said: "Assuming, without deciding, that Wright's wife would have been actually entitled to a community interest in the property as against a purchaser with notice of the marriage, still the facts found in this case would, under the doctrine announced in *Sadley* v. *Niesz,* 5 Wash. 182 [31 Pac. 630, 1030], forever estop her from claiming any interest as against the respondent here, who was a purchaser in good faith without notice."

Our conclusion from the foregoing is that there is no "public policy" which forbids the transferee in cases such as this from setting up the wife's conduct as an estoppel against her right to avoid her husband's transfer of community real property.

The cases relied upon by respondent, of which *Hart* v. *Church,* 126 Cal. 471 [77 Am. St. Rep. 195, 59 Pac. 296], and *Friermuth* v. *Steigleman,* 130 Cal. 392 [80 Am. St. Rep. 138, 62 Pac. 615], are the most conspicuous examples, are not in point. They are cases where one of the spouses alone executed a deed to or a mortgage upon the home-

stead. Under the homestead law of this state an absolute interdiction is placed upon the alienation or encumbrance of the homestead by one of the spouses only, the statute containing a positive declaration that the homestead of a married person "cannot" be conveyed or encumbered unless both spouses execute and acknowledge the instrument of conveyance or encumbrance. (Civ. Code, sec. 1242.) Such being our law relative to homesteads, it is apparent at once that any attempted conveyance or encumbrance of the homestead in which both spouses do not join is not merely voidable but is absolutely void. It is "the merest nullity"—to quote the langugae of *Hart* v. *Church, supra.* (126· Cal. 477 [58 Pac. 912].) And because it is a nullity it cannot be validated· by estoppel. "Neither" [spouse], says the court in *Hart* v. *Church,* "could separately ratify it so as to give it validity, nor be estopped by conduct from asserting its invalidity, because under no circumstances could the act or conduct of either separately be held to validate such a void instrument without doing violence to the plain letter of the law." In the Friermuth case the court employed this language: "There is no estoppel here; the mortgage was absolutely void." (130 Cal. 395 [62 Pac. 616].) This language is not applicable to cases arising under section 172a for the reason that, as we have shown, an instrument executed by the husband only, whereby community real property which has not been selected as a homestead is alienated, is not void but voidable. The title passes, but the wife has the right to restore it by avoiding her husband's instrument of transfer. Without doubt this is a right which the wife may waive or lose by estoppel.

[12] Holding, as we do, that estoppel is a defense which may be pleaded by the husband's vendee or grantee in an action such as this, it follows that the trial court erred in sustaining objections to evidence offered by appellant in support of the facts pleaded by him by way of estoppel, and that it also erred in failing to make specific findings upon the facts so pleaded.

The judgment is reversed.

Works, J., and Craig, J., concurred.