BELT *v.* BASER.

5-3366                                         383 S. W. 2d 657

Opinion delivered November 16, 1964.

*Spears & Sloan,* for appellant.

*Nance & Nance,* for appellee.

JIM JOHNSON, Associate Justice. This suit involves ownership of the proceeds of a life insurance policy.

On May 26, 1962, Horace R. Baser was issued a certificate of insurance by Travelers Insurance Company under Baser's employer's group life policy in the sum of $2,500.00. The beneficiary was his mother, Ruby E. Baser. On November 29, 1962, the named beneficiary was changed to Joan D. Baser, his wife. On the morning of January 23, 1963, Horace Baser and Joan Baser were found dead in their home, apparently the result of gunshot wounds.

Appellee Ruby Baser filed a petition in Crittenden Probate Court on March 8, 1963, for appointment of an administrator of the estate of Horace Baser and after qualification, letters were issued to her as administratrix. Her inventory of the estate included the proceeds of the Travelers policy. A petition for distribution of funds was filed on October 16, 1963, by appellant J. W. Belt, adoptive father of Joan Belt Baser's three children (born of a prior marriage), praying that the insurance proceeds be declared the property of the estate of Joan Baser. Appellee's motion to dismiss the petition for distribution was denied, the court finding that the petition was not a claim for distribution but was in fact a claim that the funds do not belong to the estate of Horace Baser. After hearing on December 17, 1963, the probate court found (1) that the insurance policy named Joan Baser as beneficiary and further provided that in the event of the death of the beneficiary prior to the death of the insured, the proceeds of the policy should be paid to the insured's estate, and (2) that there was no sufficient evidence that Horace Baser and Joan Baser died otherwise than simultaneously and that the proceeds are assets of Horace Baser's estate, and dismissed appellant's petition.

For reversal appellant urges first that "the findings of the court are erroneous and contrary to both the law and the evidence."

The insurance policy provisions applicable in this case are as follows:

"If death shall occur while the employee is insured under said policy in accordance with the terms, conditions and provisions thereof, the amount of insurance in force thereunder on his life at the date of death will be paid to the beneficiary by the employee." . . .

"Payment of any part of the insurance for which there is no beneficiary . . . surviving at the death of the employee, shall be made to the executors or administrators of the employee . . ."

Appellant contends that the burden was on appellee to prove that the beneficiary was not "surviving at the death of the employee," and cites *Watkins* v. *Home Life & Accident Ins. Co.,* 137 Ark. 207, 207 S. W. 587. In that case the insured and the beneficiary were shot and killed from ambush and there was nothing in the proof to indicate which died first. The estates of both men claimed the proceeds of the policy. The relevant portion of Judge Hart's opinion is as follows:

"The clause relied on, therefore, is the following: 'If any beneficiary shall die before the insured, that the interest of such beneficiary shall vest in the insured.' This provided for a substituted beneficiary in case of the death of the primary one. The beneficiary, therefore, had a qualified interest in the policy, and *his death in the lifetime of the insured is therefore a condition which must exist and must be shown to exist before the right of any subsequent beneficiary can be asserted.* J. E. Fischer was the beneficiary named in the policy, and under its terms his representative had a *prima facie* title to the fund. In this case by the terms of the policy itself the substituted beneficiary could only take in case the insured survived the beneficiary. *It is not a case where the beneficiary takes in the event he survives the insured.* The insured and the beneficiary both died in the same disaster. There is no proof as to which one died first. Until it is shown that the beneficiary died in the lifetime of the insured, we think, according to the terms of the policy of insurance, the fund is payable to the representative of the beneficiary because it is only in the event

of the death of the named beneficiary in the lifetime of the insured that the heirs of the insured can take." [Emphasis ours.]

In the case at bar, the policy provides that the beneficiary will take in the event the beneficiary survives the insured, and the burden was therefore on appellant to prove that the beneficiary (under whom he claims) survived the insured, which he failed to do.

Appellant next states that the trial court erred in holding that under the Uniform Simultaneous Death Act [Ark. Stat. Ann. §§ 61-127, 61-128 (1947)] the presumption is that the insured survived the beneficiary, urging that there is no presumption either way and is a question of proof.

Section 61-127 provides:

"Where the insured and beneficiary in a policy of life or accident insurance have died and there is no sufficient evidence that they have died other than simultaneously the proceeds of the policy shall be distributed as if the insured had survived the beneficiary."

Section 61-128 states:

"This act shall not apply in the case of wills, living trusts, deeds, or contracts of insurance wherein provision has been made for distribution of property different from the provisions of this act."

The policy provisions here coincide with the provisions of the Simultaneous Death Act. The trial court found that there was no sufficient evidence that the insured and the beneficiary died other than simultaneously. The record sustains the trial court's findings. The Act creates its own presumptions and exceptions and like all prima facie presumptions falls when the fact to be presumed can be proved. It follows, therefore, there would be no presmuption either by Act or policy wording if appellant had proved that the beneficiary had survived the insured.

Appellant's final point urged for reversal is that "it is against public policy for one committing homicide, or anyone claiming under him, to profit by his wrongful act." This is irrefutable—as far as it goes. See Ark. Stat. Ann. § 61-230 (1947). In the case at bar there were inferences but no legal proof that the insured murdered the beneficiary and killed himself. They were found dead in their bedroom, each with two gunshot wounds in the head and a pistol lying closer to Horace Baser than to Joan Baser. "To conclude that the insured killed his wife in order to do what he could have accomplished by notifying the company of his desire to change the beneficiary is too absurd to require any discussion. And a denial of liability on the ground of public policy based on such a premise, as respects a contract of insurance on his own life, is carrying the doctrine far beyond its limits as recognized in this state. The killing of the wife initiated no claim whatever upon the policy on the husband's life; it was his suicide which made the policy payable." *Longenberger* v. *Prudential Ins. Co. of America*, 121 Pa. Super. 225, 183 Atl. 422.

" 'Public policy is based upon the theory that the murderer himself intends to enjoy and that that is the reason he murdered; but where he could have no enjoyment out of it, he could not have had the intent. The rule of public policy doesn't apply at all.' . . . When the reason for the application of the rule does not exist the rule cannot be invoked." *Union Central Life Ins. Co.* v. *Elizabeth Trust Co.*, 183 Atl. 181 (N. J. 1936).

Affirmed.