ESTATE OF DAVE GORDON, DECEASED, THE EXCHANGE NATIONAL BANK OF TAMPA, VICTOR INGRAM AND EDWARD I. CUTLER, EXECUTORS, AND ESTATE OF CLARA W. GORDON, DECEASED, THE EXCHANGE NATIONAL BANK OF TAMPA, VICTOR INGRAM AND EDWARD I. CUTLER, EXECUTORS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9307–76.    Filed June 6, 1978.

*Joseph D. Edwards* and *Michel G. Emmanuel,* for the petitioners.

*Gerald W. Hartley,* for the respondent.

FEATHERSTON, *Judge:* Respondent determined deficiencies in petitioners' estate taxes in the following amounts:

Estate of Dave Gordon ....................$328,795.43
Estate of Clara W. Gordon ............... 179,789.28

Some of the issues have been settled, and the issues remaining for decision are as follows:

(1) Whether the Estate of Dave Gordon is entitled to a marital deduction under section 2056[1] for property passing to his surviving spouse.

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect on the date of death of Dave Gordon and Clara W. Gordon, unless otherwise noted.

(2) Whether petitioners are entitled to recover the attorneys' fees and court costs incurred in this litigation.

## FINDINGS OF FACT

Petitioners are the Estate of Dave Gordon, deceased, the Exchange National Bank of Tampa, Victor Ingram, and Edward I. Cutler, executors, and the Estate of Clara W. Gordon, deceased, the Exchange National Bank of Tampa, Victor Ingram, and Edward I. Cutler, executors. All the executors were legal residents of the State of Florida or had their principal offices in that State at the time the petition was filed in the instant case. The Estates of Dave Gordon (hereinafter also referred to as Dave's estate or petitioner's estate) and Clara Gordon, acting by their duly authorized representatives, filed Federal estate tax returns with the Internal Revenue Service Center, Chamblee, Ga.

Sometime between 5:30 p.m. on June 19, 1972, and 10:40 a.m. on June 20, 1972, Dave Gordon (hereinafter Dave) shot his wife, Clara W. Gordon (hereinafter Clara), either once or twice, and then shot himself. They were both found dead in Dave's office located in Tampa, Fla., at about 10:40 a.m. on June 20, 1972.

The Tampa Police Department investigated the decedents' deaths and filed a report which described the death scene and the condition of the bodies as found on June 20, 1972. The report classified the decedents' deaths as a murder-suicide, and notes indicating there was a murder-suicide pact were found by investigating officers. The Office of the Medical Examiner of Hillsborough County, Fla., also prepared reports concerning the deaths of Dave and Clara. No autopsies were performed on the decedents, and each death certificate recites that the date and hour of death was "unknown."

Two guns, a 38-caliber Smith & Wesson revolver and a 45-caliber Colt revolver, were found at the scene of the death of the two decedents. Dave kept the 45-caliber Colt revolver in his desk located in his office and had test fired it twice into a door jamb in his office on an occasion prior to June 20, 1972. On June 20, 1972, the door jamb contained six bullet marks. The other four bullet marks were made by the 38-caliber Smith & Wesson revolver at an undetermined time.

Clara was shot twice. One projectile entered the upper middle left-hand side of her chest and exited the upper middle left-hand

side of her back. The second projectile entered her left temple and exited her right temple. Dave was shot once with the 38-caliber pistol. The projectile entered his right temple and exited from the left top and back portion of his head.

At the time the police officers investigated the scene of the two deaths, the 38-caliber pistol contained one spent round under the hammer and four additional live rounds. The investigating police officers found four spent 38-caliber shell casings and two spent 38-caliber lead bullets in a trash can located in the office where the two decedents were found. Also the investigating police officers found that the 45-caliber pistol contained one spent round under the hammer and, moving clockwise, the pistol contained two misfires, followed by one spent round and then followed by two live rounds.

At the time the bodies were found, Clara was lying on a sofa in Dave's office, and Dave was lying on the floor with his head resting on a pillow. Dave was not wearing his shoes, and the eyeglasses which he usually wore were placed on a desk in the office.

After certain specific bequests, Dave's will devised and bequeathed the rest, residue, and remainder of his estate in trust to be administered pursuant to a trust agreement executed on December 30, 1953. Dave's inter vivos trust dated December 30, 1953, as amended in its entirety on February 28, 1972, provided that if Clara was living at the time of Dave's death the trust was to be divided into two shares, one designated "Marital Trust— Trust 'A' " and the other designated "Residuary Trust—Trust 'B.' " The marital trust share was that portion of the trust estate the value of which when added to all other qualifying property passing to Clara resulted in the maximum marital deduction being received by Dave's estate. All the remaining trust corpus was allocated to the residuary trust share in which Clara received a life estate. Article IV of the trust provided, in part, as follows:

B. Marital Trust—Trust "A". * * *

6. *Simultaneous Death or Wife Not Surviving.* If the Trustor and his wife shall die in a common accident or as a result of a common disaster or under such circumstances that it is doubtful which of them died first, it shall be presumed that the Trustor's wife survived the Trustor for the purposes of the establishment of Trust "A". If the Trustor's wife shall not survive the Trustor, Trust "A" shall not be established, and all of the trust estate shall be held,

administered and ultimately disposed of as a part of Trust "B" created under paragraph C hereinafter.

Dave's will further provided in item VIII as follows:

In the event that my wife and I shall perish in a common accident, or as a result of a common disaster, or under such circumstances that it is doubtful which of us died first, it shall be presumed that she survived me, and this presumption shall apply throughout this Will.

Clara's will left all her household furnishings, personal effects, and tangible personal property to Dave, provided he survived her, but otherwise made no devise or bequest to him. The will also provided in item IX as follows:

In the event my husband, DAVE GORDON, and I shall perish in a common accident or as the result of a common disaster, or under such circumstances that it is doubtful which of us died first, it shall be presumed that I survived him, and this presumption shall apply throughout this Will.

On the Federal estate tax return filed for Dave's estate, a marital deduction was claimed for the property reported as passing to the marital trust for Clara pursuant to the terms of Dave's will and trust. On the Federal estate tax return filed for Clara's estate, the value of the property received from Dave's estate was reported as an asset, and a credit was claimed for a portion of the estate taxes paid by Dave's estate.

In the notice of deficiency issued to Dave's estate, respondent, among other adjustments, determined that the estate was not entitled to a marital deduction "since the decedent's spouse predeceased him." In the notice of deficiency issued to Clara's estate, respondent, among other adjustments, disallowed the credit claimed by the estate for taxes paid by Dave's estate with respect to the property in which Clara had a life estate.[2] In this latter notice of deficiency, respondent determined that Dave predeceased Clara and that her power of appointment in the marital deduction trust created by her predeceased husband was includable in her gross estate.[3]

---

[2] On brief petitioners conceded that, if they prevail on the marital deduction issue, Clara's estate is not entitled to a credit for taxes paid by Dave's estate.

[3] The parties have stipulated that resolution of the value of the power of appointment in Clara's estate depends on this Court's determination of the marital deduction (order-of-death) issue in Dave's estate.

OPINION

Under section 2056, an estate is allowed a marital deduction against the gross estate in "an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate." This language imposes two requirements which are pertinent to our inquiry: first, and most important in the instant case, the decedent's spouse must survive him; second, the property must pass to her. The issue in the instant case boils down to whether *under the terms of Dave's will*, interpreted under Florida law, Clara can be deemed to have survived Dave. If so, Dave's will prescribes that a portion of his property passes to the marital trust for Clara's benefit and Dave's estate is entitled to the claimed deduction under section 2056.

In a situation like the instant case where there is a dispute as to which spouse died first, section 20.2056(e)–2(e), Estate Tax Regs., defines the section 2056 survivorship requirements as follows:

> If the order of deaths of the decedent and his spouse cannot be established by proof, a presumption (whether supplied by local law, the decedent's will, or otherwise) that the decedent was survived by his spouse will be recognized as satisfying paragraph (b)(1) of section 20.2056(a)–1 [i.e., that the decedent was survived by his spouse] * * *

This regulation imposes on Dave's estate the burden of showing that the order of the deaths "cannot be established by proof." Once this showing is made, the regulation directs attention to the part of Dave's will[4] which provides that if he and Clara should die "under such circumstances that it is doubtful which of * * * [them] died first," it shall be "presumed" that Clara survived him. Thus, if Dave's estate can show that "it is doubtful" which of Clara or Dave died first, then the presump-

---

[4] Florida has adopted a version of the Uniform Simultaneous Death Act, Fla. Stat. sec. 736.05 (1973), in part as follows, but it does not apply in that decedent's will differs from that Act:

(1) No sufficient evidence of survivorship.—Where the title to property or the devolution thereof depends upon priority of death and there is no sufficient evidence that the persons have died otherwise than simultaneously, the property of each person shall be disposed of as if he had survived, *except as provided otherwise in this law.* [Emphasis supplied.]

* * * * * * *

(6) Does not apply if decedent provides otherwise.—This law shall not apply in the case of wills, living trusts, deeds or contracts of insurance wherein provision has been made for distribution of property different from the provisions of this law.

tion supplied by Dave's will, if it is effective under State law, is recognized by the regulation as satisfying the section 2056 requirement that Clara survived him.

The word "presumed," used in Dave's will, has many different meanings, and its meaning in each case depends upon the context in which it is used. *Cloud v. State,* 150 Tex. Crim. 458, 202, S.W.2d 846, 848 (Crim. App. 1947). In some contexts, the word is used in its technical sense as a presumption which is not evidence but a rule about evidence. *Perry v. Boston Elevated Ry. Co.,* 322 Mass. 206, 76 N.E.2d 653, 655 (1948). Such a presumption merely calls upon a party to prove his case, and the presumption disappears when evidence is introduced to overcome it. *Kentucky Trust Co. v. Glenn,* 217 F.2d 462, 465 (6th Cir. 1954). In other contexts, the word "presumed" is not used in its evidentiary sense but means "deemed" or "considered." *Oregon Worsted Co. v. Chambers,* 217 Or. 104, 342 P.2d 108, 111 (1959); *Rice v. McCarthy,* 73 Cal. App. 655, 239 P. 56, 58 (2d Dist. Ct. App. 1925). Stated another way, upon the proof of required preliminary facts, the conclusion to be "presumed" is made mandatory. *State v. Hansen,* 203 N.W.2d 216, 219 (Iowa 1972).

We think it quite clear that Dave's will uses the word "presumed" in this latter sense. Had the word "presumed" been used in its technical evidentiary sense, Dave's estate would first be required to prove doubt as to whether Dave or Clara survived. Then, if there was any evidence that Dave did not predecease her, the presumption that he did so would disappear, and Dave's estate would have the burden of proving that he died first. It is almost inconceivable that Dave's will was intended to impose this double and, in fact, inconsistent burden on his estate—first to prove doubt as to survivorship and then to prove that he predeceased Clara.

The wills of both Dave and Clara and the amendment to the marital trust were all signed on February 28, 1972. They all contain substantially the same provision that, in case of doubt as to who died first, it shall be "presumed" that Dave died before Clara. The obvious objective in adopting these provisions was to attempt to assure that, in case their deaths occurred in a common disaster and there was doubt as to survivorship, the designated share of Dave's property would pass to the marital trust and Dave's estate would qualify for a marital deduction. Clearly, with this objective in mind, Dave's intention was that

upon a preliminary showing that "it is doubtful" whether he or Clara died first, it shall be deemed or considered or concluseased presumed that he predeceased her.

The burden of proof cast upon Dave's estate by the regulation and by Dave's will are substantially the same. If Dave's estate carries its burden of showing, in the words of the regulation, that the order of deaths "cannot be established by proof," it has also established, in the words of Dave's will, that "it is doubtful" which of Clara or Dave died first.

At the trial of the instant case, petitioners presented testimony from expert witnesses that it was impossible to determine definitely which of the decedents died first. Respondent's case focused on trying to recreate chronologically the events which may have taken place late on June 19, 1972, or early on June 20, 1972. From this alleged sequence of events, respondent concludes that in all probability Clara predeceased Dave. Weighing all the evidence we must side with petitioner. We find that the order of decedents' deaths "cannot be established by proof" and, therefore, under the terms of Dave's will, "it is doubtful" which of Clara or Dave died first.

One of petitioner's experts testified, and we agree, that there is a very skimpy record from which to draw conclusions or make inferences concerning the order of decedents' deaths. The tangible evidence before this Court consists of a police report describing the bodies and the place where the bodies were found, a medical examiner's reports, and photographs taken of the bodies, the scene of the deaths, and the door jamb containing six bullet holes. Both deaths occurred several hours before the bodies were discovered. There were no witnesses to the shooting, no autopsies were performed, and the death certificates recite that the date and hour of death were "unknown."

Petitioners' first expert witness, Dr. Rydell, testified that from the photographs and the information contained in the medical examiner's report pertaining to Clara he could not determine the path or trajectory of the two 38-caliber bullets through Clara's head or chest or the vital organs which were struck by the bullets. With respect to the wounds to Clara's head, he stated that he had seen persons walk into an emergency room after receiving gunshot wounds to the temple. He concluded that the only precise way to determine the extent of Clara's injuries was by autopsy.

Dr. Rydell further testified that, as between a 38-caliber gunshot wound and a 45-caliber wound, he could not, in his experience with such wounds, distinguish the amount of damage done by each. He related that the trajectory of the bullet through the body was more significant in determining damage than the caliber of bullet. With respect to the head wounds to Dave and Clara, he found that they were similar in that the bullets entered the temple region and traversed the brain. However, noting from the police report, the medical examiner's reports, and the photographs that the exit wounds were different, he could not, from the evidence available, determine the severity of the respective head wounds or whether the bullets did similar damage to Dave and Clara.

Petitioners' second expert witness, Dr. Lardizabal, corroborated Dr. Rydell's testimony. With respect to Dave's head wound, he stated that the bullet obviously destroyed or affected certain vital brain centers, but the mechanics of destruction of those centers could not be explained from the information available. Significantly, he concluded that "there are so many things that are not known in these two cases. That is why I cannot give an honest, accurate * * * opinion as to who died first."

Respondent's expert witness, Dr. Lipkovic, agreed that the external appearances of the head wounds to Dave and Clara were similar except for the points of exit of the respective bullets and that the difference in the caliber of the bullets was unimportant in reaching a determination as to the survival time of each decedent. He further agreed that the paths of the bullets were significant in determining what vital organs were damaged and that a small difference in trajectory through the head might make a difference in survival time. However, it was his opinion, disregarding the chest wound to Clara, that the head wounds were equally destructive and that Dave and Clara were immediately dead as soon as each wound was inflicted.

As to the timing of the respective wounds, Dr. Lipkovic testified that the following sequence of events probably occurred and resulted in the death of the two decedents:

(a) Dave first inflicted a 45-caliber gunshot wound to Clara's heart.

(b) Dave then attempted to inflict a 45-caliber gunshot wound to her left temple, but experienced two misfires; however, on the

third attempt he was successful in inflicting the 45-caliber gunshot wound to her left temple.

(c) Dave then test-fired a 38-caliber Smith & Wesson pistol four times into a door jamb located in the office where he and his then dying, if not dead, wife were present.

(d) Dave then removed two spent 38-caliber lead bullets from the floor and placed them in a trash can.

(e) Dave then reloaded the 38-caliber pistol and placed the four spent cartridge casings in the trash can.

(f) Dave then removed his eyeglasses and his shoes and lay on the floor placing his head on a cushion from the couch on which his wife was lying.

(g) Dave then committed suicide by inflicting a 38-caliber gunshot wound to his head in the right temple area.

Dr. Lipkovic, however, emphasized that the sequence of events was "probably" what occurred and that he could not "state anything with certainty." Assuming this sequence of events and viewing the same evidence available to petitioners' experts, respondent's expert concluded that in all probability, Clara died before Dave died.

The experts agree that the speed of each decedent's death depends upon the actual mechanics by which each person died, but on this latter point there are much confusion and very little concrete evidence. The testimony points out that the death of either Dave or Clara may have resulted merely from loss of blood, eventually depriving the brain of needed oxygen; it may have been the result of hemorrhage putting excessive pressure on vital centers of the brain, thereby causing them to cease functioning; death may have occurred because vital brain centers were destroyed by hydrostatic pressure which built up within the cranium as the result of the gunshots; it may have resulted from a vital brain center having been destroyed by passage of the bullet, or a bone projectile created by it; or death may have occurred from other mechanical processes.

Each of these processes of death requires differing lengths of time (though the difference may be only seconds) and no one can say which of the processes actually caused the death of either Dave or Clara. The actual processes of death of the two decedents may or may not have been dramatically different. Accordingly, the survival time for each decedent after they were shot would be affected.

Moreover, although at first blush Dr. Lipkovic's recreation of the sequence of events which may have taken place and resulted in decedents' deaths appears reasonable, we think that, on closer examination, his approach assumes too much and depends heavily on surmise and naked logic unsupported by a sound factual basis. On cross examination respondent's expert was, by his own admission, unsure about several aspects of the alleged timing of events, and the testimony which follows shows that even his initial assumption concerning the sequence of events may have been incorrect:

Q. I believe you next testified that the first shot was in the chest of Clara Gordon?

A. Yes, trying to be logical again. That's the on—

Q. On—

A. —only basis I have.

Q. On what facts that are in the evidence do you base that?

A. Well, knowing that Clara had a shot in her chest and a shot in her head, the head shot renders a person immediately unconscious and is fairly devastating. I don't think the head shot would call for another body shot. On the other hand, a body shot would leave a person possibly conscious for at least a few seconds and if not conscious, moaning, gurgling, making noises, even twitching and this will prompt a person to administer coup de gras [sic].

Q. Is there any evidence you can point to that there was twitching or moaning or noises?

A. No, sir, I cannot.

\* \* \* \* \* \* \*

Q. Then would you say that it's a guess on your part? That the chest wound was the first one?

A. It is a knowledge about the behavior of people who have been shot in the heart or in the chest known from hundreds of my cases.

Q. * * * No fact in this case leads you to that conclusion, is that correct?

A. That is correct, sir.[5]

From all the available evidence, we cannot tell whether Clara or Dave was in truth the survivor. In the words of section 20.2056(e)–2(e), Estate Tax Regs., the "order of deaths" of Dave and Clara "cannot be established by proof." In the words of Dave's will, "it is doubtful" which of them died first. This is precisely the situation which Dave foresaw when he signed his will. In such circumstances, his will directs that it shall be presumed—deemed, considered, conclusively presumed—that he

---

[5]The fact that the Commissioner also made a determination in the case of Clara's estate that Dave predeceased Clara confirms that, in his view, the order of their deaths was not beyond doubt.

died first, and such presumption is recognized as satisfying the section 2056 requirement of survivorship. The designated portion of his property passed to the marital trust, and Dave's estate is entitled to the marital deduction.

The circumstances of a tragedy like this one will never exactly parallel another, and for this reason the decision in one case cannot be decisive on a different set of facts. We note, however, that in other murder-suicide cases the courts have declined to accept speculation and questionable inferences as bases for holding that one party to such a pact survived the other. See, e.g., *Belt v. Baser*, 238 Ark. 644, 383 S.W.2d 657, 659 (1964) ("inferences but no legal proof"); *Darby v. Schoolcraft*, 125 Ind. App. 440, 125 N.E.2d 812, 814 (1955) ("clearly speculatory"); *In re Meyer's Estate*, 276 App. Div. 972, 94 N.Y.S.2d 620, 621 (2d Dept. 1950) ("impossible to determine that the two persons died otherwise than simultaneously").

Respondent contends, however, that Dave's estate had the burden of proving that Clara survived Dave because the notice of deficiency determined that "decedent's spouse predeceased him." The Commissioner's authority under section 6212 is to determine a deficiency and send notice thereof to the taxpayer. To be sure it has been said that a notice of deficiency carries with it a "presumption of correctness," and the taxpayer has the burden of proving that the deficiency is wrong. *Welch v. Helvering*, 290 U.S. 111 (1933). However, the taxpayer does not have the additional burden of disproving all factual statements made in the notice. Cf. *Brainard v. Commissioner*, 7 T.C. 1180, 1184–1185 (1946). The Commissioner, by including factual statements in the notice, cannot cast a heavier burden of proof upon petitioner than is required to show that the determined deficiency is erroneous.

Petitioners in the instant case have proved that the deficiencies were in error to the extent of the disallowance of the marital deduction to Dave's estate. To reach this result, petitioners had to show, focusing on the language of Dave's will, that "it is doubtful" whether Dave or Clara died first. Petitioners did not have to show, as respondent argues, that Clara predeceased Dave. By reason of the regulation quoted above, the presumption in Dave's will is recognized as satisfying the section 2056 requirement that he was survived by Clara. Since Dave's estate has shown the doubt required to trigger the

presumption in Dave's will, the estate is entitled to the marital deduction. The Commissioner cannot characterize the issue here presented in terms more onerous than the regulation. Nor can the Commissioner by including recitals in the notice of deficiency alter the rules governing the devolution of Dave's property[6] or the circumstance in which the marital deduction is to be allowed.

Finally, petitioners request this Court to award attorneys' fees and court costs emanating from this proceeding "in order to partially rectify the hardship caused the beneficiaries of the estates by prolonging the administration of the estates and compelling it [sic] to employ counsel to defend this action." On this point we must follow our prior decision in *Key Buick Co. v. Commissioner*, 68 T.C. 178 (1977), on appeal (5th Cir., Aug. 15, 1977), and hold that this Court is without authority to award the attorneys' fees and court costs sought in the instant case.

To reflect the foregoing,

*Decision will be entered under Rule 155.*

---

[6]The law is settled that a testator's intention, expressed in his will, that his spouse shall be deemed the survivor in case of a common disaster will be given effect in circumstances where it is doubtful which one predeceased the other. E.g., *In re Fowles' Will,* 222 N.Y. 222, 118 N.E. 611 (1918); *In re Roland's Estate,* 40 Misc.2d 1018, 244 N.Y.S.2d 743 (N.Y. County Surr. Ct. 1963); *In re Brew's Will,* 7 App. Div.2d 364, 183 N.Y.S.2d 321 (1st Dept. 1959).