Robert T. KIMREY, et al *v.* Ira Willard BOOTH, et al.
Ira Willard BOOTH *v.* NATIONAL
BANK OF COMMERCE

84-216, 84-257 & 84-258                     685 S.W.2d 139

Supreme Court of Arkansas
Opinion delivered February 18, 1985
[Rehearing denied March 25, 1985.]

*Guthrie, Burbank, Dodson & McDonald,* for appellant Thomas Joe Booth.

*Shackleford, Shackleford & Phillips, P.A.,* for appellant Albert Hanna.

*Vickery & Jones, P.A.,* for appellants Robert T. Kimrey and St. Paul Fire and Marine Ins. Co.

*Compton, Prewett, Thomas & Hickey, P.A.,* by: *William I. Prewett;* and *Barber, McCaskill, Amsler, Jones & Hale,* by: *Glen W. Jones, Jr.,* for appellants.

*Harrison & Brown, P.A.,* by: *Robert L. Brown,* for appellee Ira Willard Booth.

*Bobby E. Shepherd,* for appellees Clara Maud Renfro Hodges, Louis Renfro, Clinton Renfro, Cal W. Renfro, Billy Renfro Prothro, and Peggy Renfro Kimrey.

JOHN I. PURTLE, Justice. This appeal results from the trial court's dismissal of appellant's complaint to terminate a family trust on grounds that it was operating contrary to public policy of the State of Arkansas inasmuch as the primary beneficiary of the trust had killed his parents. The complaint also alleged fraud in the management of the estates of the decedents before such assets were merged into the trust.

Appellants argue several reasons for reversal but the arguments essentially allege that the trial court erred in applying the doctrine of res judicata and in failing to conduct a hearing.

Calvin Leslie Booth and his wife, Betty Renfro Booth,

were killed on December 17, 1978. The son of the decedents, Thomas Joe Booth, was charged with voluntary manslaughter in connection with his parents' death. Estates were opened for Calvin and Betty Booth. At the time Calvin and Betty Booth died, Calvin's father, Roland Booth, was past 80 years of age and was in a nursing home. A guardian was appointed to act on his behalf in making a claim for the estates of Calvin and Betty Booth. The son and the grandfather eventually came to an agreement whereby the decedents' estates were merged into a family trust. The "Booth trust" was established on February 11, 1981. The assets of Roland Booth were included in the family trust. At the time the trust was created Roland Booth's estate had a value of $30,000, Betty Booth's estate had a value of $40,500, and Calvin Booth's estate was valued at $242,700. The terms of the trust provided that Roland Booth would receive $850 per month for the rest of his life. Roland Booth died on September 2, 1981, survived by several siblings or their children.

While Calvin and Betty's estates were pending the court found that Tom was the sole heir. During his lifetime Roland Booth petitioned the Probate Court to redetermine heirship in Calvin's estate on the basis that Tom should not profit from his parents' deaths. No hearing was held on this petition. Sometime after the redetermination petition had been filed a compromise agreement was reached whereby the estates were merged and the trust created. The complaint to terminate the Booth trust was filed on October 4, 1983. On May 23, 1984, the Chancellor and Probate Judge dismissed all pending cases attacking the trust on the grounds of res judicata. The cases are consolidated on appeal.

The primary attack on this estate is on the grounds that a person should not be entitled to benefit from the death of any person when the beneficiary caused the death. We reaffirm our holding that public policy prevents an heir from sharing in the victim's estate when the death is purposely caused by that heir. *Wright* v. *Wright*, 248 Ark. 105, 449 S.W.2d 952 (1970). In the present proceeding there was an allegation that Tom Booth had been convicted of voluntary manslaughter; however, no such proof was presented when

the estates of his parents were opened. The appellants argue that they did not enter into the estate proceedings because they did not receive notice. Tom and Roland Booth were the only possible heirs of Betty and Calvin Booth. Therefore, notice was not required to be given to appellants. Ark. Stat. Ann. § 62-2111 (Repl. 1971). The reason notice was not required is that these appellants had no direct interest in the estates of either Calvin or Betty Booth. In ARCP Rule 17(a), it is said that every action shall be prosecuted by the real party in interest. With respect to the question whether Tom could inherit from his parents, Roland was the real party in interest, and it was Roland who raised the issue and entered into the settlement. These appellants had no standing to do so then, and the fortuity of Roland's death gives them no standing now.

While the trial court's ruling was on the basis of res judicata rather than the appellant's lack of standing, it is clear that the correct result was reached, and on that basis we can affirm. *Greeson* v. *Cannon*, 141 Ark. 540, 217 S.W. 786 (1920). See also, *Moose* v. *Gregory*, 267 Ark. 86, 590 S.W.2d 662 (1979), and the cases cited in that opinion.

Affirmed.

HAYS, J., dissents.

STEELE HAYS, Justice, dissenting. Appellant sought a hearing before the probate judge on allegations that under a settlement between Thomas Joe Booth and Roland Booth, Thomas Joe Booth was acquiring the estates of his natural mother and adoptive father, when in fact he had caused their deaths by stabbing. Certified copies of criminal convictions in Texas accompanied appellants' petition. The public policy of this state against such occurrences is so pronounced [see *Sargent, Estate of* v. *Benton State Bank, Adm'r*, 279 Ark. 402, 652 S.W.2d 10 (1983); *Wright* v. *Wright*, 248 Ark. 105, 449 S.W.2d 952 (1970); *Belt* v. *Baser*, 238 Ark. 644, 383 S.W.2d 657 (1964); *Smith* v. *Dan*, 226 Ark. 438, 290 S.W.2d 439 (1956)] and appellants' allegations so flagrant, that I believe the trial court should have given appellants a hearing to determine the facts and whether fraud and

collusion warranted vacating the settlement and reopening the estates.

To say that only Thomas Joe Booth and Roland Booth were entitled to notice of the appointment of administrators for the estates of Betty Booth and Calvin Booth puts form above substance and ignores the obvious — that Thomas Joe Booth is alleged to be the killer of both decedents. The notice requirements of our Probate Code were not drafted with this extraordinary situation in mind, and make no alternative provision for notice when an heir may be disqualified by his own homicide. Otherwise, some provision would doubtless have been made to prevent such developments. The recourse is for the trial court to reopen the proceedings on the petition of interested parties and I would reverse and remand for that purpose.