Ann M. LUECKE, Ex'x of the Estate of Nell S. SIMPSON, Deceased *v.* MERCANTILE BANK OF JONESBORO, AR., Ex'r of the Estate of S.L. SIMPSON, Deceased; Marion S. CURTNER & Mary Laura BEENE

85-32                                    691 S.W.2d 843

Supreme Court of Arkansas
Opinion delivered June 24, 1985
[Rehearing denied July 15, 1985.*]

---

* George Rose Smith and Dudley, JJ., not participating.

*Clayton L. Phillips, Jr.; Gann, Fried & Edwards*, by: *Mac Gann*; and *Laney, Gaughan & Womack*, by: *Robert S. Laney*, for appellant.

*Shaver, Shaver & Smith*, by: *J.L. Shaver, Jr.*, and *Frierson, Walker, Snellgrove & Laser*, by: *G.D. Walker*, for appellant.

JACK HOLT, JR., Chief Justice. S.L. Simpson of Jonesboro murdered his wife, Nell S. Simpson, and then killed himself. At issue in this case is the effect the murder-suicide had on the estates of the respective parties, and in particular, on Mr. Simpson's will. Our jurisdiction is pursuant to Sup. Ct. R. 29(1)(p).

Mrs. Simpson was killed on October 7, 1978. Although Mr. Simpson immediately tried to kill himself, he did not die of his self-inflicted injuries until the next day.

Both parties left wills. Mrs. Simpson's, which is in probate, named her daughter, Ann M. Luecke, as executrix and sole beneficiary. Mr. Simpson's will, which is also in probate, appointed the appellee, Mercantile Bank of Jonesboro, as executor.

In his will, Mr. Simpson left all interest in the household goods, furniture, fixtures and appliances in the jointly owned residence to his wife, and further left her ⅓ of the rest of his estate, including real and personal property, certificates of deposit, stocks, bonds and notes. The remainder of the estate he left to the other appellees, his daughters by a previous marriage, Marion S. Curtner and Mary Laura Beene.

Mr. and Mrs. Simpson owned a residence, an automobile, and a $40,000 certificate of deposit as tenants by the entirety. Other property included a $40,000 CD in the name of S.L. Simpson, payable on death to Nell S. Simpson and a $20,000 CD in the name of Nell S. Simpson, payable on death to S.L. Simpson.

Mr. Simpson owned in his own name 1,905.33 acres of farm land valued in excess of $1,000,000 and personal property valued in excess of $748,000.

The appellant filed a wrongful death action in United States District Court against the appellees which proceeded to judgment in her favor. The judgment, which has been paid, found that Mrs. Simpson's death was a result of the wrongful conduct of Mr. Simpson.

The appellant then filed a petition to quiet title which sought to establish the appellant's interest in the real and personal property held jointly or as tenants by the entirety by Mr. and Mrs. Simpson. The suit also sought to impose a constructive trust on the assets of Mr. Simpson's estate for the benefit of Mrs. Simpson.

On September 11, 1984, the Craighead Chancery Court entered a decree ordering:

1) the CD in the name of Mrs. Simpson, payable to Mr. Simpson, vested in Mrs. Simpson's estate (that was conceded by the parties);

2) All jointly held property was to be allocated ½ to the estate of Mr. Simpson and ½ to the estate of Mrs. Simpson;

3) The CD in the name of Mr. Simpson, payable to Mrs. Simpson vested in Mr. Simpson's estate;

4) All the real and personal property owned by Mr. Simpson in his name vested in his estate and in the devisees under his will,

exclusive of Mrs. Simpson and her estate.

It is from the decree that this appeal is brought. The appellant argues that the court erred in all respects in the disposition of the property, with the exception of the CD in Mrs. Simpson's name which vested in her estate.

The appellant asks this court to adopt either of two theories which would allow Mrs. Simpson's heirs to inherit Mr. Simpson's property, even though she predeceased him. First, the appellant urges the court to indulge in a legal fiction and hold that where one spouse kills another, the killer is considered to have predeceased the victim for purposes of descent and distribution. The second theory urged by the appellant concerns the principle of restitution. The appellant maintains that since public policy prohibits one from retaining benefits which are acquired by wrongful conduct, the appellees would be unjustly enriched were they allowed to benefit from the fact that Mrs. Simpson's death caused her legacies under Mr. Simpson's will to lapse. Appellant therefore asks the court to impose a constructive trust on the assets of Mr. Simpson's estate for the benefit of Mrs. Simpson's estate as restitution for the benefit conferred upon his estate by his wrongful conduct.

■ In rejecting these theories the trial court found that there is no Arkansas authority for reversing the order of death in a murder/suicide situation and that constructive trusts do not apply in a case involving this fact situation. As to the jointly owned property the trial court found the logical conclusion was that the murder/suicide severed the marital relationship and the parties became tenants in common, entitling each to recover ½ of the property. We agree with the rationale of the trial court and affirm its judgment.

■ We have long followed the rule that one who wrongfully kills another is not permitted to profit by the crime. *Horn* v. *Cole, Adm'r*, 203 Ark. 361, 156 S.W.2d 787 (1941); *Wright* v. *Wright*, 248 Ark. 105, 449 S.W.2d 952 (1970); *Sargent, Estate of* v. *Benton State Bk., Adm'r*, 279 Ark. 402, 652 S.W.2d 10 (1983); *Kimrey* v. *Booth*, 285 Ark. 18, 685 S.W.2d 139 (1985); and Ark. Stat. Ann. § 61-230 (Repl. 1971).

Here, however there is no effort by the estate of Mr. Simpson to recover anything from Mrs. Simpson's estate. Mr. Simpson's

heirs are not the recipients of any ill gotten gains. At most, Mrs. Simpson had a contingency interest in Mr. Simpson's estate based on her dower interest and the specific provisions of his will. That contingency never ripened into a vested interest since Mrs. Simpson died first.

■ The purpose underlying our general rule that a person not profit from a wrongful act is to deter such conduct. The rule is inapplicable where the wrongdoer stands to gain nothing by his act, as where he kills himself too.

This is not a new rule in Arkansas. In *Belt* v. *Baser*, 238 Ark. 644, 383 S.W.2d 657 (1964) this court considered whether life insurance proceeds could be paid to the heirs of the insured when the insured killed the policy's beneficiary and then killed himself. We quoted a New Jersey case as follows:

> " 'Public policy is based upon the theory that the murderer himself intends to enjoy and that that is the reason he murdered; but where he could have no enjoyment out of it, he could not have had the intent. The rule of public policy doesn't apply at all.' . . . When the reason for the application of the rule does not exist the rule cannot be invoked." *Union Central Life Ins. Co.* v. *Elizabeth Trust Co.*, 183 Atl. 181 (N.J. 1936).

*See also Barnes* v. *Cooper, Adm'r*, 204 Ark. 118, 161 S.W.2d 8 (1942).

■■ Since we hold that under the facts of this case the appellees are not profiting from their father's wrongful conduct, we decline to follow either of the theories proposed by the appellant. Specifically, our case law does not provide a basis for the legal fiction that Mr. Simpson predeceased Mrs. Simpson for purposes of descent and distribution. Nor is this a proper case for the award of restitution. As previously stated, the only interest Mrs. Simpson had in the real and personal property owned by Mr. Simpson in his own name was as a beneficiary under his will and through her dower interest. When she predeceased him, she never acquired any further claim, because her death prevented her dower interest from vesting, *LeCroy* v. *Cook, Comm. of Revenues*, 211 Ark. 966, 204 S.W.2d 173 (1947), and caused her legacies under the will to lapse, *Christy* v. *Smith, Adm'r*, 226 Ark. 289, 289 S.W.2d 885 (1956).

■ As to the property held by Mr. and Mrs. Simpson as tenants by the entirety, we think the better rule is that applied by the trial court which holds that the murder/suicide severed the marital relationship and the parties became tenants in common, entitling each to recover ½ of the property. In adopting this viewpoint, we apparently align ourselves with the majority of courts who have ruled on this subject. 42 ALR3d 1116 § 12 (1972). *See also* Palmer, *Law of Restitution*, § 20.13 p. 255 (1978). The effect of the severance of the marital relationship is much like that caused by divorce. Likewise, our holding is consistent with our statutory law on divorce which provides for a similar equal division of the property, Ark. Stat. Ann. § 34-1215 (Supp. 1983).

■ The $40,000 CD issued to S.L. Simpson was also properly awarded to his estate. Arkansas Stat. Ann. § 67-1838(5) provides that, upon the death of the holder of such an account, "The person or persons designated by him and who have survived him shall be the owners of the account." Therefore, since survival of the designated beneficiary is a requirement, the CD did not pass to Mrs. Simpson or to her estate.

Affirmed.

GEORGE ROSE SMITH, J., not participating.